* * * * * * * * * * *
The undersigned have reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Deluca and the briefs and arguments of the parties. The appealing party has not shown good ground to reconsider the evidence, receive further evidence, rehear the parties or their representatives, or amend the Opinion and Award, except for modifications.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. On the date of injury, August 6, 2001, the parties were subject to and bound by the North Carolina Workers' Compensation Act.
2. At all times relevant, an employment relationship existed between plaintiff and the defendant-employer.
3. Sentry Insurance Company is the carrier on the risk.
4. Plaintiff's average weekly wage on the date of injury was $439.50, yielding a compensation rate of $293.00 for the date of disability.
5. The parties stipulated to any and all Industrial Commission forms filed during the pendency of the claim and judicial notice was taken of all such forms.
6. The parties stipulated to any and all medical and/or rehabilitation records generated in the claim.
7. At the hearing before the Deputy Commissioner, the parties stipulated into evidence a Pre-Trial Agreement, as well as a set of medical records. Further, during testimony, defendants' Exhibits 1 and 2 were admitted into evidence without objection.
 * * * * * * * * * * *
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff suffered an admittedly compensable injury by accident on August 6, 2001. Plaintiff suffered a crushed pelvis and genitourinary injuries and dysfunction when he was pinned between a forklift and a door. As a result of the compensable injury, plaintiff is unable to walk normally, has limited control over his bodily functions, and has intense pain from any sexual arousal. Plaintiff has severe nerve damage which causes him to lose consciousness if he turns his head in certain directions. The evidence presented shows that plaintiff is in constant pain, and for purposes of pain control, a bag was surgically implanted in his back which contains morphine that is constantly distributed into his spine.
2. Defendants immediately began paying total and permanent disability benefits.
3. Since plaintiff's date of injury, he has received medical treatment from various providers and has undergone numerous surgical procedures. At the time of the hearing before the Deputy Commissioner, plaintiff was receiving regular treatment from Dr. Mark Lyerly, a neurosurgeon, Jay Boulter, a licensed marriage and family therapist/counselor, and Dr. Barbara Thomas, a psychiatrist who was overseeing plaintiff's psychiatric medication management. Additionally, since the beginning of this claim, Ms. Groce has been the medical case manager assigned to assist plaintiff and his family.
4. Plaintiff was discharged from the hospital in mid-August 2001. At that time it was determined that plaintiff needed personal care and assistance because of his difficulties ambulating and attending to other activities of daily living. Toni Shulenberger (plaintiff's sister-in-law) was engaged to provide to plaintiff attendant care services for four hours per day, five days per week, at the rate of $10.00 per hour, for a total payment of $200.00 per week. At the hearing before the Deputy Commissioner, Toni Shulenberger clarified that she was not a Certified Nursing Assistant and was instead considered to be a Personal Care Aide. She testified that she had worked at least four hours per day for every weekday since the date of accident. She testified that she classified her services in two categories. The first was as personal care to plaintiff, wherein she provided him with standby assistance in bathing, shaving, clipping his toenails, etc. She considered the other part of her services to be "chores," which included his laundry, changing of linens, vacuuming, and keeping his living space clean.
5. At the hearing, Toni Shulenberger also testified that approximately once a week, her four hours of care consisted of cleaning and maintaining plaintiff's separate residence in which he had not lived since the date of the accident. Prior to her testimony, defendant-carrier was not aware that Toni Shulenberger was charging Sentry Insurance Company for those services.
6. Shirley Shulenberger, plaintiff's mother, testified that plaintiff has been living with her since his discharge from the hospital in August 2001. Shirley Shulenberger testified that she assists plaintiff with going to the bathroom, provides him with his medications, cooks, cleans, washes laundry, manages plaintiff's finances, and schedules his medical appointments. As plaintiff has been depressed and suicidal, he requires his mother's constant attention. Plaintiff's mother also testified that she provides him with verbal cues to motivate him to eat, dress, etc. At the time of plaintiff's injury by accident, Shirley Shulenberger was employed full time at Pillowtex, and continued to work full time until July 2003 when Pillowtex closed. Between August 2001 and July 2003, plaintiff was at home alone for a portion of the day, and Toni Shulenberger provided care for plaintiff for four hours per day. Shirley Shulenberger testified that plaintiff now needs constant attention, and requests that defendants pay her for giving 24 hours of care to Plaintiff per day.
7. Defendants in this matter reached an initial agreement with Shirley Shulenberger to pay her a flat fee of $30.00 per trip for transporting plaintiff to local medical appointments and $75.00 per trip for transporting plaintiff to out-of-town medical appointments. Shirley Shulenberger was not required to submit her time or mileage in exchange for these reimbursements. Defendants' Exhibit 1, which is a spreadsheet of expenses charged to Sentry by Shirley Shulenberger, reveals that beginning in August 2002, Shirley Shulenberger began charging Sentry higher rates for certain medical appointments. Shirley Shulenberger increased her rates only occasionally until October 2003, at which time she regularly began charging Sentry increased rates for appointments. She testified that the length of the appointment would determine how much she charged defendants, but she did not clearly explain how many hours generated a $100.00 charge as opposed to a $150.00 charge.
8. In early 2005, the Shulenberger family approached defendants about housing modifications and transportation issues. At that time, defendants began to examine, from a cost perspective, what those issues would entail and, at that point, realized Shirley Shulenberger had unilaterally increased what she was charging defendants for medical visits. It was also at that time that defendants realized that Toni Shulenberger was charging them for caring for plaintiff when plaintiff was hospitalized out-of-town. Toni Shulenberger testified that neither defendants nor Ms. Groce has been notified that she was performing "chores" at a residence other than the residence where plaintiff was living.
9. At the time of the hearing, Darren Todd Shulenberger, plaintiff's brother, also requested to be paid for services he alleges he has provided to the family because of plaintiff's injury. According to testimony from the Shulenberger family, plaintiff mowed both his own yard and his mother's yard prior to his injury, and following his injury, his brother, Darren Todd Shulenberger, was responsible for those lawn-mowing duties. Further, Darren Todd Shulenberger also testified that he has had to take over car maintenance tasks from plaintiff. He estimated that these activities required about two hours per day, seven days a week. Mr. Shulenberger stated at the time of the hearing that before the date of the hearing, he had never requested that defendants pay for any such services.
10. Brad Wilson, one of the adjusters who had handled this claim between September 2002 and February 2005, testified that defendants had paid Shirley Shulenberger and Toni Shulenberger all charges they had submitted for reimbursement. He further testified that prior to the housing and transportation issues which arose in early 2005, defendants had never questioned any medical care or procedure recommended by any of plaintiff's providers. Mr. Wilson further testified that defendants would be willing to pay for necessary medical care, as recommended by plaintiff's treating physicians.
11. Mr. Wilson further testified that defendants had never been made aware that Darren Todd Shulenberger was alleging that he was entitled to be reimbursed for lawn and car maintenance services because of plaintiff's injuries. Further, Mr. Wilson did not know that Toni Shulenberger had charged defendants for cleaning and maintaining plaintiff's unoccupied residence.
12. Dr. Barbara Thomas, plaintiff's treating psychiatrist, testified that plaintiff is suffering from major depressive disorder, single episode, moderate to severe with mild psychotic features; post-traumatic stress disorder; and a pain disorder with psychological and physiological features. She attributes these ailments to plaintiff's occupational injury. She testified that "he's just so depressed and panicky and anxious all the time, he really — he can barely function outside of his home. His safe person has become his mother. She attends him almost constantly." She testified that plaintiff cannot function on his own. She testified that he needs someone with him at all times.
13. Dr. Mark Lyerly, a neurosurgeon, testified that plaintiff's condition was "horrible" and that plaintiff had difficulty taking care of the basics. Dr. Lyerly also testified that although plaintiff's family was able to leave him for three to four hours at a time, plaintiff could not be left alone for a full 18 hours per day. Dr. Lyerly also testified that beginning in October 2003, he had recommended home health care for plaintiff for four hours per day, 5 days per week. He verified that as of December 7, 2004, he had again written a prescription noting that plaintiff needed home health care four hours per day, five days per week, forever. He further testified that he believed it was reasonable that plaintiff's family should be paid for at least 14 hours per day of care because they were responding to plaintiff's current needs of cooking, yard work, etc. He testified he did not think it made sense to pay for home care for 24 hours per day. Further, Dr. Lyerly testified that a certified nursing assistant was not required to provide such attendant care.
14. Jay Boulter, a professional counselor who has been treating plaintiff since 2002, testified that plaintiff needs the constant attendant care that is currently being performed by plaintiff's mother, although in his that care could also be provided by someone else in his opinion.
15. Ms. Groce testified that Toni Shulenberger had been paid, four hours per day five days per week since August 2001. Defendants believed Toni Shulenberger to be a Certified Nursing Assistant at the time of initial engagement. Ms. Groce testified that at the present time, attendant care was more focused on "standby assistance," for prompting and possible safety issues as plaintiff could do his own bathing and dressing. Ms. Groce also testified that no doctor had ever recommended that anyone be paid more than four hours per day, five days per week. She pointed out that Dr. Lyerly, in a prescription of 2004, had written an order for attendant care for an indefinite period of time, but left it at four hours per day, five days per week. Ms. Groce also indicated that she would defer to other professionals on whether round-the-clock care was necessary. She further testified that the competitive rate for personal care services in the area was $14.50 per hour.
16. Based upon the competent evidence of record including the testimony of lay witnesses and medical expert testimony, and as agreed upon by defendants, the undersigned hereby find as fact that it is necessary and reasonable for plaintiff to have attendant care for eighteen (18) hours per day, seven days per week, by a family member or agency at the rate of $14.50 per hour.
17. Defendant has not engaged in stubborn, unfounded litigiousness during the course of defending this claim.
 * * * * * * * * * * *
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained a compensable injury arising out of and in the course of his employment and as a direct result of his work assigned on August 6, 2001. As a direct and natural result of and causally related to his injury, plaintiff sustained severe pelvic and genitourinary injuries, as well as cervical injuries. N.C. Gen. Stat. § 97-2(6).
2. Notwithstanding arrangements wherein defendants have paid plaintiff's mother and his sister-in-law for attendant care services, no member of the Shulenberger family ever made a motion with the Industrial Commission and no Industrial Commission order was ever filed which orders defendants to pay any Shulenberger family member for their assisted services to plaintiff as is required by N.C. Gen. Stat. §97-26(a); Rule 407 of the Workers' Compensation Rules of the North Carolina Industrial Commission; North Carolina Workers' Compensation Medical Fee Schedule, Chapter 14 "Hospital Fee Schedule" (January 1996); and Hatchett v. Hitchcock Corporation, 240 N.C. 591 (1954). Accordingly, the requests by Shirley Shulenberger, Toni Shulenberger, and Darren Todd Shulenberger for retroactive compensation for attendant care services must be denied.
3. Attendant care provided to plaintiff for eighteen hours per day, seven days per week at the rate of $14.50 per hour, is appropriate under N.C. Gen. Stat. § 97-25.
4. As defendant's actions in the course of litigation of this case do not constitute stubborn, unfounded litigiousness, defendant is not responsible for payment of plaintiff's attorney's fees. N.C. Gen. Stat. § 97-88.1.
 * * * * * * * * * * *
Based upon the foregoing findings of fact and conclusions of law, the undersigned enters the following:
 AWARD
1. Defendants shall provide attendant care services to Plaintiff for a total of 18 hours per day, seven days per week, at a personal care/aide level of care at the rate of $14.50 per hour from the date of filing of the Form 33 Request for Hearing, and until further order by the Industrial Commission. Plaintiff's family shall not be required to document and specify the care rendered to plaintiff for reimbursement purposes.
2. Defendants can choose to provide these services to plaintiff by engaging a professional vendor to provide said services or by paying a member of the Shulenberger family.
The person designated to provide said care shall provide that care to plaintiff within the residence in which plaintiff is residing.
3. Defendants shall pay the costs.
This the 15th day of November, 2006.
S/____________ DIANNE C. SELLERS COMMISSIONER
CONCURRING:
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER
CONCURRING IN A SEPARATE OPINION
 S/______________________ LAURA KRANIFELD MAVRETIC COMMISSIONER